OF THE

## STATE OF IOWA.

AT

## DES MOINES, MAY TERM, A. D. 1903.

AND IN THE FIFTY-SEVENTH YEAR OF THE STATE.

---

THE HOME SAVINGS & TRUST COMPANY *et al.*, Plaintiffs, v. THE DISTRICT COURT OF POLK COUNTY, IOWA, *et al.*, Defendants, CONSOLIDATED WITH W. A. McKEE, *et al.*, Plaintiffs, v. DISTRICT COURT OF POLK COUNTY, IOWA, *et al.*, Defendants.

Appeal Bond: DETERMINIATION OF SUFFICIENCY. Where the parties 1 elect to submit a motion to discharge a supersedeas bond, because of defect in substance or insufficiency of security, to the district court or judge thereof under Code, section 4133, the order so made is binding.

Jurisdiction: APPEAL. Parties cannot confer jurisdiction by consent, and where the law prescribes a method of appeal it is exclusive and cannot be modified by a court or judge without express authority.

Certiorari: WHEN WILL LIE. Where a new jurisdiction is created 3 by statute and the court or officer exercising it proceeds in a

summary manner, or in a mode different from the common law, and the remedy for a revision of its execise is not provided by the statute creating it, *certiorari* from the court of general supervision over inferior jurisdictions will lie for its revision.

**Appointment of Receiver: APPEAL: SUPERSEDEAS BOND: AMOUNT OF.**
An order appointing a receiver for ·a corporation is for the benefit of all the creditors, and on an appeal from such an order the supersedeas bond must be sufficient to cover the value of the' order to all the stockholders and creditors, although it may have been made on the application of only a portion.

**Supersedeas Bond: CONDITION OF.** · A supersedeas bond on an appeal from the appointment of a receiver should contain the condition "to save the appellee harmless from the consequences of taking the appeal," as provided in Code, section 4134.

THURSDAY, MAY 28, 1903.

CERTIORARI proceedings, commenced in this court, to review the rulings of the district court of Polk county, Iowa, with reference to a supersedeas bond in an action brought by W. A. McKee *et al.*, against the Home Savings & Trust Company *et al.* for the appointment of a receiver. Neither party to that action seems to have been satisfied with the rulings of the trial court with reference to the bond; and each sued out a writ of *certiorari* to review its action. The cases were consolidated, and are now before us for ·a single opinion. Writ in first case *dismissed*, and in last case *sustained* in part.

*Dowell & Parrish* for The Home Savings & Trust Co.

*I. M. Earle* and *Dudley & Coffin* for W. H. Bremner.

*Baily & Stipp, Read & Read, C. L. Powell, Louis Block and Others* for W. A. McKee and Others.

DEEMER, J.—The Home Savings & Trust Company is a building and loan association organized under the laws of this state. In September of the year 1901, at a meeting

of the stockholders, it was resolved to go into voluntary liquidation under a plan which contemplated the appointment of a trustee by the executive council of the state. Pursuant to this plan, one W. H. Bremner was appointed trustee, gave bond, and duly qualified as such. At the May, 1902, term of the district court of Polk county, W. A. McKee, *et al.*, stockholders in the association, brought suit against the Home Savings & Trust Company, Bremner, and others, for the appointment of a receiver for the corporation, charging that it was being mismanaged and was insolvent, that the law under which Bremner was appointed trustee was unconstitutional, and that his appointment was illegal. Other stockholders intervened in this action; some of them joining with plaintiffs in the relief asked, and others praying that the plan of voluntary liquidation be carried out. Bremner appeared and filed the following answer: "The defendant Bremner further states that, as trustee of said association and the representative of all the stockholders, he is in such a position that in this action, which is a controversy between the various stockholders of said Home Savings & Trust Company, he should not take part on either side, and therefore respectfully asks that he be excused from either affirming or denying the balance of the allegations set out in the petition of the plaintiffs. Defendant further states that he has no interest in this controversy, other than that he desires that that action be taken which will best subserve the interest of the stockholders. · Wherefore the defendant prays that this court shall take such action as will best subserve the interest of the stockholders of the Home Savings & Trust Company, and that he be dismissed, with costs." On the issues thus joined the trial court heard the case, and made an order appointing one Whisenand receiver.

From this order the Home Savings & Trust Company and W. H. Bremner appealed to this court, and filed in the district court a supersedeas bond in the sum of $25,000,

conditioned as follows: "Now if the said appellants shall
pay the said appellees all costs and damages that shall be
adjudged against said appellants on said appeal, and shall
also satisfy or perform the said judgment or order ap-
pealed from in case it shall be affirmed, and any judgment
or order which the said Supreme Court may render, or
order to be rendered by the said district court, and all
damages to property during the pendency of the appeal
out of the possession of which the appellees are kept by
reason of the appeal, then this obligation to be void,
otherwise to be and remain in full force and effect."
This bond was approved by the clerk of the district court.
Thereupon plaintiffs in the main action filed a motion in
the district court for the discharge of the said
bond because insufficient both in form and
amount. After hearing this motion the trial
court made an order to the effect that the bond was in-
sufficient in amount, and directed that a new bond be
filed, with penalty in the sum of $200,000, and, upon fail-
ure to do so, that the supersedeas be discharged. The
motion, so in far as it attacked the conditions of the bond,
was overruled. The parties thereupon filed anomalous
motions in this court, asking us to review and reverse the
rulings made by the trial court. These motions were
overruled for the reason that as the parties had elected to
proceed under section 4133 of the Code of 1897, before the
trial court, which had concurrent jurisdiction with us
under said section in such matters, its rulings could only
be brought before us for correction and review by and
through the remedies provided by law. Under section
4133 of the Code, it is clear that if the parties elect to
submit such matters to the district court or judge, and to
secure a ruling thereon from such a tribunal, the order,
when made, is as binding as any other made by a court
having jurisdiction. Doubtless this court, on a proper
showing, has inherent power to protect its own jurisdic-

1. APPEAL bond: determina- tion of suffi- ciency.

tion on appeal, and it undoubtedly has supervisory control over all inferior tribunals. But this control is not arbitrary in character. Of necessity, it must be exercised according to and under approved forms of law. In the motions filed before us, we were not asked to invoke any inherent power we might possess to stay proceedings to protect our jurisdiction. They were grounded on the notion that the trial court had made errors, which we were asked to correct. No doubt was expressed of the juris liction of the district court or of the trial judge to act on the motions filed before it, but it was contended that the action on these motions was erroneous, and we were asked to correct this error on motions filed in this court. Had these motions been sustained without an order of reversal of the action of the trial court or judge, we should have had two conflicting orders by courts or tribunals given equal jurisdiction by section 4133 of the Code, and the parties would have been at sea as to which to obey. Our appellate jurisdiction must be exercised according to law. Generally speaking, appellate tribunals

2. JURISDICTION: derive their jurisdiction over any case from
appeal. the law, and the parties cannot by consent confer jurisdiction. Moreover, when the legislature prescribes the method for the exercise of the right of appeal or supervision, such method is exclusive, and neither court nor judge may modify these rules without express statutory authority, and then only to the extent specified. *C. R. I. & P. R. R. v. Day*, 76 Iowa, 278; *Westbrook v. Wicks*, 36 Iowa, 382; *Simonson v. R. R.*, 48 Iowa, 19; *In re Bresee*, 82 Iowa, 573; *People's Co. v. Steamer Co.*, 43 Mich. 336 (5 N. W. Rep. 398); *Norman v. Curry*, 27 Ark. 440.

After these motions were overruled, each party sued out a writ of *certiorari* to test the legality and correctness of the court's ruling on the motion to discharge the supersedeas; the plaintiff in the first case above entitled claiming that the trial court was in error in raising the penalty

of the bond from $25,000 to $200,000, and the plaintiffs in the second case asserting that the court was in error in not ordering a change of the conditions in the bond.

These are the cases which are now before us. That the exact question presented may be more fully understood, we copy a part of the opinion of the trial court on the motion to discharge, as follows:

"The evidence shows that the assets of the corporation are from one hundred and eighty to two hundred thousand dollars; that the plaintiffs and interveners represent claims to the value of about sixteen thousand dollars. The simple question is whether or not the bond in this case should be in a sum sufficient to save the appellees, in their individual capacity, harmless, or whether the court should take into account the fact that the assets exceed $180,000 in value, and will be subject to the complete control, management, and disposition of the defendants pending the hearing of the appeal. It will probably require from one and one-half to two years' time to take the judgment of the supreme court upon the merits of the case. Where a receiver is in charge of the assets of such corporation, the funds are under the immediate supervision of the court, and may be disbursed upon order of the court from time to time. In the case of an appeal and supersedeas, the court has no control over the funds, which may accumulate to any extent, or the defendants may, pending appeal, reduce the entire assets to cash, and dispose of the same without the supervision or order of the court. Section 4128 of the Code of 1897 provides: 'No proceedings under a judgment or order  *  *  *  shall be stayed by an appeal unless the appellant executes a bond with one or more surieties to be filed with and approved by the clerk of the court in which the judgment or order was rendered or made, to the effect that he will pay to the appellee all costs and damages that shall be adjudged against him on the appeal; and will satisfy and perform the order or

judgment appealed from in case it shall be affirmed, and any judgment or order which the supreme court may render or order to be rendered by the inferior court, not exceeding in amount or value the original judgment or order, and all rents of or damages to property during the pendency of the appeal out of the possession of which the appellee is kept by reason of the appeal.' Section 4134 of the Code of 1897 provides as follows: 'If the judgment or order is for the payment of money, the penalty shall be in at least twice the amount of the judgment and costs. If not for the payment of money, the condition shall be to save the appellee harmless from the consequences of taking the appeal, but in no case shall the penalty be less than $100.00.' These two sections are to be read and considered together. Under section 4128 the express provision of the statute is, 'will satisfy and perform the judgment or order appealed from in case it shall be affirmed, and any judgment or order which the supreme court may render or order to be rendered by the inferior court, etc. Now the order in this case was for the appointment of a receiver, and that he take charge of the assets of this corporation amounting to at least $180,000. In case the judgment of this court is affirmed by the supreme court, it will be the duty of these defendants to turn over the entire assets, together with the accumulations and interest, if any, which it is admitted amount to $180,000. The supersedeas bond now on file is for $25,000 only. It is entirely clear, then, that this bond, in which the penalty is fixed at $25,000, in not sufficient to require the defendants to perform the judgment of the court, or of the supreme court in case of an affirmance, nor is it sufficient to require the defendant to turn over the assets, amounting to over $180,000. When a receiver has been appointed, the case becomes then one in which the particular plaintiff in the suit at which the receiver was appointed is not only interested, but every stockholder and

creditor is interested in the conservation of the assets. It was contended in argument that where, for instance, the plaintiff's interest amounts to $1,000, and he brings a suit against a corporation whose assets are $300,000, and at his suit a receiver is appointed, the court being satisfied that the assets are in danger, and may be dissipated and lost, it is said that although the court has appointed a receiver, and although the assets of the defendant corporation amount to $300,000, yet the supersedeas bond ought not to exceed $2000. This court is of the opinion that such a rule is not contemplated by the statute, and, if the rule contended for by appellants' counsel is to be established, we prefer that such rule shall be first announced by the supreme court. It is the opinion of this court that in a case where a receiver has been appointed and qualified, as in this case, that in order to supersede this appointment, and to prevent the funds and assets of the corporation from being turned over to said receiver, the defendant company should file such a supersedeas bond as will be sufficient to protect the entire assets of the corporation, and, in the event that such appointment is affirmed by the supreme court, that all of the assets of the corporation shall be forthcoming, and shall be paid over to said receiver, for the use and benefit of all the creditors of the corporation.

It is also claimed that the bond is not in form sufficient to protect the appellee. Under section 3190 of the Code of 1873, the word 'condition,' in the third line of such section, was 'penalty.' By the Code of 1897 the word 'condition' has been substituted for the word 'penalty,' and it is claimed that the bond should be so worded that, in the event of the affirmance, no part of the assets of the corporation shall be taken to pay the expenses of the appeal. In my opinion, this is a question that may more properly be determined after the appeal has been disposed of. The bond, however, should, in the judgment of this court, follow the language of the statute as to conditions,

and that as to penalty, in view of the large amount of assets involved, should not be less than $200,000."

The exact point made by the plaintiffs in the first case is whether or not, where a receiver is appointed for a corporation upon the application of a small portion of the stockholders or creditors, the supersedeas bond must be sufficient to save such stockholders or creditors harmless, or must it be sufficient to cover all the assets of the corporation? We quote from the argument of plaintiffs' counsel as follows: "In the case at bar the court below had jurisdiction of the parties, and the power to determine whether or not the bond in question was sufficient to indemnify the appellees. This it attempted to do, and its action in this respect was void, being in excess of jurisdiction. It follows, therefore, that under our statute the action of the court below may be reviewed by *certiorari*." The plaintiffs in the second case contend that the court was in error in not requiring the appellants in the main case to file a bond conditioned to indemnify the stockholders against any expense, loss, depreciation, or damages growing out of or occasioned by the appeal. They rely largely on section 4134 of the Code, which is quoted in the opinion of the trial court.

The first question for our determination is one of practice: Will *certiorari* lie in such a case as this? The provision of the statute (Code section 4133) under which

3. CERTIORARI: defendant acted permits application to the
when will
lie. court making the order appealed from for a discharge of the bond on account of defect in substance or insufficiency in security. This remedy is summary, and not according to the course of the common law, and no appeal is provided from the order made on such a motion. Indeed, we doubt if an appeal will lie from such an order. If it does, the remedy is not a speedy or useful one, for the mischief would have been done before such an appeal could be heard. It seems to be fundamental that when a

new jurisdiction is created by statute, and the court or officer exercising it proceeds in a summary mode, or in a course different from the common law, and a remedy for the revision of its exercise is not given by the statute creating it, *certiorari* from a court having general superintendence and control over inferior jurisdictions will lie for its revision. *Dubuque v. Rebman*, 1 Iowa, 444; *Ex parte Buckley*, 53 Ala. 42; *Vandusen v. Comstock*, 3 Mass. 184; *Milwaukee Co. v. Schubel*, 29 Wis. 444 (9 Am. Rep. 591); *Jerome v. Williams*, 13 Mich. 521, and cases cited in 4 Encyclopedia of Pleading & Practice, pages 87, 88, and 6 Cyc. pages 739, 740; *State ex rel. Washington, etc., Co. v. Superior Court*, 11 Wash. 366 (39 Pac. Rep. 644). The constitution gives us supervisory control over all inferior judicial tribunals (article 5, section 4); and this has not been taken away, even if it could be, by the legislature. On the contrary, it is expressly recognized by sections 4100 and 4109 of the Code. See, also, *Helmich v. Johnson*, Morris, 89. It is very generally held that, where the constitution confers supervisory control over inferior tribunals, the legislature has no power to encroach upon, impair, or limit the jurisdiction thus conferred. *Ex parte Candee* 48 Ala. 386; *Detroit v. R. Co.*, 63 Mich. 712 (30 N. W. Rep. 321); *State ex rel. v. Ashland*, 71 Wis. 502 (37 N. W. Rep. 809). That we have jurisdiction, there can be no doubt. See a very valuable note to *State v. Johnson*, (Wis.) 79 N. W. Rep. 1081, 51 L. R. A. 33.

Of course, the writ will not be granted to review or control the discretion of the subordinate tribunal unless it clearly appears that there has been an abuse of this discretion. Ordinarily the questions presented by this writ go to the jurisdiction of the inferior tribunal, or to the legality of its action. But where, as here, there is no other remedy for reviewing the action of the trial court, appellate tribunals may investigate and decide the questions involved on their merits. However, the same rule

obtains as to the findings of fact as where an appeal is taken in a law action; that is to say, if there be any substantial evidence to support the finding, we will not interfere.

With these rules settled, we now go to the record. The trial court set out the statutes involved in its opinion, and the first question to be solved is, did it err in increasing the penalty of the bond to $200,000? The order appealed from was not for the payment of money; hence the first sentence of section 4134 of the Code does not apply. In view of that fact, the clerk of the district court was required primarily to fix the penalty. This he should do with reference to the value of the order, and of the rents of or damages to the property during the pendency of the appeal. He fixed it in this case at $25,000. Plaintiffs in the first case now before us insist that as appellees in the main case are alone interested, and, as the amount of their claims does not exceed $16,000, the penalty as fixed by the clerk is sufficient, and that the trial court was in error in increasing the same to $200,000. True, the bond in such cases runs to the appellee in the main suit, but it does not follow that they are the only persons who may sue thereon. Indeed, section 3467 of the Code seems to give any one who has sustained an injury a right to sue thereon. It is necessary, then, for us to consider who may sustain an injury by the appeal in the main case, and what is the value of the order appealed from.

Remembering that in the original action a receiver was appointed to take charge of the property belonging to the association, we inquire as to the nature of the order, and as to who is entitled to protection thereunder. The appointment of a receiver determines no right. Such an order is granted for the purpose of preserving the property, to the end that it may ultimately be distributed among the parties found entitled thereto. The order of

4. Appointment of receiver: appeal: supersedeas bond: amount of.

appointment creates no lien in favor of the parties apply-
ing for it, nor does it give them any advantage or prefer-
ence over other claimants to the property. *Ellis v. Boston
R. Co.*, 107 Mass. 28. The receiver represents all parties
in interest, and it is his duty to administer upon the
estate for the benefit of all parties concerned. While
the property is in the hands of the receiver it is in
*custodia legis*, for the benefit of all the parties in interest.
*Bank of Montreal v. R. R.*, 48 Iowa, 518. The appoint-
ment is made on the theory that, if the property is left in
the hands of the owner, it is liable to be destroyed or
wasted, and that it is for the best interests of all concerned
that it be placed in the hands of the court for distribution.
When, therefore, the order for the appointment is super-
seded, its operation is suspended, and the property is
restored to him from whom it was ordered to be taken for
the purpose of preserving it. *Farmers' Bank v. Backus*,
63 Minn. 115 (65 N. W. Rep. 255).

We must assume, in deciding the question now before
us, that the order appointing the receiver was correct, and
that if a supersedeas is ordered the property will be re-
stored to the owners, who were squandering or wasting it
previous to the time the order for the appointment of the
receiver was made. This order was for the benefit of all
the creditors, and all are presumptively interested in its
being sustained. At least, they may all take advantage
of it, and, in the absence of controlling equities, are
entitled to share equally in the proceeds. *Kaiser v. Kel-
lar*, 21 Iowa, 95.

Plaintiffs in the first case concede that the bond
should contain the conditions required by section 4128 of
the Code; and the real question here is, what is a sufficient
penalty to cover these conditions? Is a penalty sufficient
which will merely cover the amount of the claims repre-
sented by the plaintiffs in the main suit? We think not.
It must be sufficient to cover the value of the order to

any and all who may have an interest therein, who, as we have seen, are all the creditors and stockholders of the association, to insure the performance of the order or judgment appealed from, and to pay all damages to the property during the pendency of the appeal. The order appealed from could only be performed by the delivery of the entire property to the receiver. Should this property be wasted or destroyed by the appellants in the main case, it is apparent that a bond with a penalty of but $25,000 would not cover a loss of something like $180,000. Should appellees in the main case be compelled to resort to action on the bond, they could only complain of some breach of its condition, which, as we think, would be damages to the property, or failure to perform the order appealed from. They have no money judgment, and, whatever their recovery under the bond, it seems to us that it would stand, like the property itself, for the benefit of all the parties interested in the receivership. Under any theory, there would have to be an accounting of the value of the property both before and after the appeal was taken, and an apportionment of the interest of each creditor therein. The obligors on the bond would be entitled to credit to the extent that they had performed the conditions thereof, and it seems that each creditor would have his remedy on the bond for the amount of his damage. Without further discussion, it is sufficient to say that we think there was no error in the order increasing the penalty of the bond to $200,000.

There remains but the one question, Did the court err in refusing to modify the conditions of the bond as prayed by the plaintiffs in the second case now before us? The 5. SUPERSEDEAS conditions, as will be noticed, closely follow bond: condition of. section 4128 of the Code; but plaintiffs say it should also contain the condition mentioned in section 4134, to the effect that appellants should save appellees harmless from the consequences of taking the appeal.

The trial court, in the opinion from which we have quoted, called attention to the change in the language of the statute. This change is difficult to explain. Evidently the entire section was intended, in the first instance, to relate to the penalty of the bond; and why the change of the word "penalty" to "condition," we are at a loss to understand.

In view of our construction of section 4128, and the conditions of the bond given thereunder, it is probably immaterial how we construe section 4134 in this case. But in view of the change of language in section 4134, and the clear statement as to what the condition shall be in such cases as this, we feel that to hold that the word "condition" should be construed to mean the same as "penalty" would be to exercise a function not vested in us, to convert judicial interpretation into legislation, and in effect to amend or repeal a plain provision of the law. The bond should also, in our judgment, contain a condition "to save appellees harmless from the consequences of taking the appeal." Just what this will cover, we have no occasion now to determine.

It follows from what we have said that the writ in the first case should be, and it is dismissed, and in the last that it should be sustained, to the extent indicated, and the action of the trial court in denying these plaintiffs' requests for a bond conditioned as required by law is in this respect ANNULLED.